UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SETH CURKIN, PARASTOU MARASHI, P.
JENNY MARASHI,

               Plaintiffs,

        v.

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT ("NYPD") JOHN AND
JANE DOES 1-10, INDIVIDUALLY AND IN
THEIR OFFICIAL CAPACITIES,

               Defendants.

**OPINION AND ORDER**

18 Civ. 7541 (ER)

Ramos, D.J.:

     Seth Curkin, Parastou Marashi ("Parastou"), and P. Jenny Marashi ("Jenny,"

collectively, "Plaintiffs") brought this civil rights action against the City of New York

and ten unnamed officers of the New York City Police Department ("NYPD") on August

18, 2018.  Doc. 1.  Pending before this Court is Plaintiffs' motion to amend the

complaint.  Doc. 22.  For the reasons set forth below, Plaintiffs' motion to amend is

granted in part and denied in part.

## I.      Factual Background and Procedural History

     Curkin and Jenny, both attorneys, are married and have two children.  Doc. 1 at ¶¶

14, 16-17, 21.  The family lives at 7 East 14th Street, New York, New York in apartment

number 820, which Curkin has owned and occupied since 2004.  *Id.* at ¶¶ 17-18.  Curkin

works for the Legal Aid Society's criminal division in the Bronx.  *Id.* at ¶ 14.  Jenny runs

a solo law practice out of their apartment specializing in police misconduct cases.  *Id.* at

¶¶ 16, 20.

On August 17, 2015, Curkin, Jenny, and their children went on vacation to California.  *Id.* at ¶ 21.  The couple gave Jenny's younger sister, Parastou, access to the apartment.  *Id.* at ¶¶ 22-23.  That evening, Parastou let Curkin and Jenny know that she would be staying at their apartment for the night.  *Id.* at ¶¶ 24-25.

At some time shortly before 5:30 a.m. on August 18, 2015, an NYPD warrant squad arrived at their building and spoke with the doorman, Les.  *Id.* at ¶¶ 30-31, 42.  When the officers told Les who they were looking for, he told them that the person they sought did not live in the building.  *Id.* at ¶¶ 42-43.  The officers then asked Les where Curkin lived and he told them apartment number 820.  *Id.* at ¶¶ 44-45.  The officers informed Les that they would be going up to the apartment and told him not to notify the apartment's occupants beforehand.  *Id.* at ¶ 45.

Parastou was awakened at 5:30 a.m. by loud banging on the door of the apartment by the NYPD officers.  *Id.* at ¶¶ 30-31.  The officers told Parastou that they had a warrant for a person whose name she did not recognize and entered the apartment.[1]  *Id.* at ¶ 32.  Parastou asked to see the warrant and to take a photograph of it to send to Curkin and Jenny.  *Id.* at ¶¶ 32, 34.  As Parastou was pulling out her cellphone, the officers asked her what Curkin and Jenny did for a living.  *Id.* at ¶ 35.  The officers' questions prompted Parastou to become fearful that they were trying to intimidate her family and she fainted.  *Id.* at ¶ 36.  When she awakened, the officers again asked about her family and again she fainted.  *Id.* at ¶ 37.  The officers moved Parastou to the couch, gave her water or juice, and called an ambulance.  *Id.* at ¶¶ 38-39.

---

[1] Plaintiffs do not address whether Parastou gave consent for the officers to enter the apartment and, though Plaintiffs' raised an illegal search claim, they did not plead whether the officers performed a search of the apartment.

At approximately 6:00 a.m., the officers called Jenny from Parastou's cellphone. *Id.* at ¶¶ 26-27.  The officers explained that they were there pursuant to a warrant and that they had called an ambulance for her sister who had fainted twice.  *Id.* at ¶ 27.  Jenny asked the officers for whom they had come, why they had come, and what they were doing in her home and office, but she did not receive a response from them.  *Id.* at ¶ 28. Jenny also spoke with Parastou, who gave her account of what had happened.  *Id.* at ¶ 29.

As they waited for the ambulance Parastou asked the officers for their names.  *Id.* at ¶ 40.  The officers told her that they would leave their business cards with the doorman, but, according to Les, they did not do so.  *Id.* at ¶¶ 40-41.  Video surveillance showed the officers entering the building, riding up and down in the elevator, and exiting the building, all without giving their business cards to Les.  *Id.* at ¶ 46.

Curkin and Jenny were shocked and stressed by the officers' entry into their home.  *Id.* at ¶¶ 48, 50.  When they returned home from vacation, Plaintiffs asked the Civilian Complaint Review Board ("CCRB")[2] to investigate the purpose of the warrant, but the CCRB informed them that it lacked jurisdiction over their complaint.  *Id.* at ¶ 51. Plaintiffs also contacted their local precinct and were informed that the precinct had not dispatched any officers to Plaintiffs' home.  Doc. 24 at 12.

Almost thirteen months after the incident, on September 16, 2016, Plaintiffs complained to the Internal Affairs Bureau ("IAB") of the NYPD, and provided the videos

---

[2] The CCRB is "an independent agency" that is "empowered to receive, investigate, mediate, hear, make findings, and recommend action on complaints against New York City police officers alleging the use of excessive or unnecessary force, abuse of authority, discourtesy, or the use of offensive language."  *About CCRB*, https://www1.nyc.gov/site/ccrb/about/about.page (last visited Sept. 17, 2020).

of the officers.[3]  Doc. 1 at ¶¶ 52-54, 64.  They also provided the IAB with the contact information for Les so that he could confirm that the officers did not give him their business cards.  *Id.* at ¶¶ 54, 64.  Plaintiffs followed up with the IAB almost bi-weekly during the course of its investigation.  Doc. 24 at 12-13.

Approximately fifteen months after their initial complaint to the IAB, on December 7, 2017,[4] Sergeant Sonia Christian of the IAB told Jenny that she could not find any record of a warrant linked to her address.  Doc. 1 at ¶ 55.  Almost seven months later, on July 2, 2018, Christian called Jenny and informed her that the officers who had entered their home were NYPD Detectives Matthew Murphy and Robert Graves.  *Id.* at ¶¶ 56-57.  Christian told Jenny that Murphy and Graves said that they had obtained Curkin and Jenny's address because a person named John Walden had placed a call from jail to a phone number linked to that address.[5]  *Id.* at ¶ 58.  They also stated that they had given their business cards to the doorman.  Doc. 1 at ¶ 62.  The IAB concluded that the claim that the officers had not identified themselves was unsubstantiated.  *Id.* at ¶ 63.  Jenny asked Christian why their claim was unsubstantiated given that the surveillance video showed the officers did not give Les their business cards and that she had provided Les' contact information so that he could confirm what she had told the IAB.  *Id.* at ¶ 64.

---

[3] The IAB is tasked with investigating misconduct and corruption by New York City police officers and civilians.  *Internal Affairs*, https://www1.nyc.gov/site/nypd/bureaus/investigative/internal-affairs.page (last visited Sept. 17, 2020).

[4] In Plaintiffs' complaint and proposed first amended complaint, they allege that they were informed by Christian that there was no warrant on December 6, 2017, but their arguments in their motion papers cite December 7, 2017 as the date of that conversation.  Docs. 1 at ¶ 55; 23-1 at ¶ 67; 24 at 4.

[5] In their opposition papers, the City proffers that the officers were looking for Walden because he was the suspect in a series of burglaries committed in lower Manhattan.  Doc. 28 at 2-3.

Christian responded by saying only that the officers had said that they had given their business cards to the doorman.  *Id.*

On August 18, 2018, precisely three years after the officers entered the apartment, Plaintiffs filed their initial complaint against the City of New York and 10 John and Jane Doe officers alleging various violations of 42 U.S.C. § 1983, including illegal search, malicious abuse of process, failure to intervene, and supervisory liability. Doc. 1.  Though Plaintiffs did not name Graves, Murphy, or Christian as defendants, they were each named in the factual recitation in the complaint:  Graves and Murphy by full name and title, and Christian by last name, title, and assignment.  *Id.* at ¶¶ 55, 57. Plaintiffs alleged that the IAB investigation revealed that Graves and Murphy had entered their home without a warrant, but, to the best of Plaintiffs' knowledge disciplinary action had not been taken.  *Id.* at ¶ 65.  Plaintiffs further alleged that Walden's call to the apartment from jail did not provide probable cause to believe he lived there.  *Id.* at 61. On November 21, 2018, the City requested an extension of time to respond to the complaint, in part to assess whether it would "represent any officers who may have had any involvement in the alleged incident and are either named as defendants currently, or may become named as defendants moving forward in this matter."  Doc. 10 at 2.  That day, the Court granted the City's request.  Doc. 11.

On January 25, 2019, the City answered and on February 22, 2019, the City made its initial disclosures pursuant to Local Civil Rule 83.10 (the "Plan").[6]  Docs. 12; 24 at 1.

---

[6] The Plan refers to a set of procedures used in §1983 cases brought against police in this District.  *Local Civil Rule 83.10 Plan for Certain § 1983 Cases Against the City of New York (Southern District Only)*, https://www.nysd.uscourts.gov/sites/default/files/pdf/Local-Civil-Rule-83.10.Final.pdf (last visited Sept. 17, 2020).  The Plan sets deadlines for, *inter alia*, initial disclosures and amended pleadings.  *Id.*

According to Plaintiffs, as part of its disclosures, the City produced an "outdated" 2012 warrant for a person whose initials are TH which had served as the basis for the officers' entry into Curkin and Jenny's apartment.  Doc. 23-1 at ¶¶ 73, 88-90.  Based on Plaintiffs' public records search, TH had not lived in the building since 2012.  *Id.* at ¶ 78.

The City also produced DD-5s,[7] which Plaintiffs contended show that the officers had contrived a computer match to Curkin and Jenny's address based on Walden's Rikers Island call log.  *Id.* at ¶¶ 70, 73, 91-94.  The log contained an entry to a phone number with a 212 area code and, because the log indicated that the call was not recorded, the officers would have been alerted that the call was to an attorney.  *Id.* at ¶ 92.  In addition, the first five matches on a TLO report[8] on the phone number matched it to the Legal Aid Society office in Manhattan;[9] the fifty-third match was to Curkin.[10]  *Id.* at ¶ 93.  The TLO report also did not show Curkin's address.  *Id.*  Plaintiffs believed that Christian could have requested the TLO report to rebut the officers' account that Walden had called a

---

[7] "A 'DD–5' is a 'Complaint–Follow Up Information Report' form used by the NYPD to memorialize steps taken and information learned during the course of an investigation."  *Thomas v. City of New York*, No. 11 Civ. 2219 (LAP) (GWG), 2013 WL 1325186, at *1 n.3 (S.D.N.Y. Apr. 2, 2013).

[8] A TLO report is a report of the search results from the TransUnion TLOxp information database.  *See, e.g.*, *U.S. v. Grushko*, No. 18 Crim. 20859, 2019 WL 5017467, at *4 (S.D. Fla. July 19, 2019).  TLOxp is used by law enforcement "for locating, researching and finding the connections between individuals, businesses and assets" and specifically for identifying and tracking suspects in crimes.  *TransUnion Completes Acquisition of TLO*, TransUnion, https://newsroom.transunion.com/transunion-completes-acquisition-of-tlo/  (Dec. 16, 2013);  *TransUnion's TLOxp for Law Enforcement*, TransUnion, https://www.tlo.com/resources/tlo/doc/industry/resources/industry-law-enforcement-as.pdf (last visited Sept. 21, 2020).

[9] Curkin worked at the Bronx office of the Legal Aid Society.  *Id.* at ¶ 26.

[10] Plaintiffs do not make clear whether the phone number listed for Curkin was to his work or personal phone.

phone number linked to Curkin's address, but did not do so in an effort to aid the officers in covering up their misconduct. *Id.* at ¶ 95.[11]

Plaintiffs requested the City's consent to amend the complaint on February 26, 2019 and followed up with the City on March 1, March 4, March 11, and March 18. Doc. 24 at 9.  On March 20, the City informed Plaintiffs that it would not consent to any amendments because the statute of limitations had expired.  *Id.*

On March 28, 2019, over eight weeks after the City filed its answer, Plaintiffs requested leave to amend the complaint to include Murphy and Graves as named defendants.  Doc. 13.  On May 3, 2019, the Court granted Plaintiffs' request for leave to move to amend and, on June 17, 2019, Plaintiffs filed their motion.  Doc. 22.

The proposed first amended complaint names Detectives Robert Graves and Matthew Murphy, and Sergeant Sonia Christian as defendants.  Doc. 23-1.  Plaintiffs also propose five new causes of action:  conspiracy and First Amendment retaliation, substantive due process, failure to investigate, access to court, and *Monell* liability, and additional factual allegations based upon the City's initial disclosures.  *Id.* at ¶¶ 139-87.

The new allegations challenge the adequacy of the IAB investigation.  Plaintiffs now allege that Christian's investigation included misrepresentations that Parastou could not recall what happened because she had fainted, and that Parastou had said that the officers had only entered the corridor of the apartment.  *Id.* at ¶ 74.  Plaintiffs claim that Christian had completed her investigation in January 2018 but had not informed them of

---

[11] The City admonishes Plaintiffs for their failure to attach these documents to their motion so that the City could "identify and respond to them."  Doc. 28 at 2.  However, the documents were produced to Plaintiffs by the City, which presumably has access to its own production.  Moreover, the documents are plainly identified in the proposed first amended complaint.  *See, e.g.*, Doc. 23-1 at ¶¶ 73, 91 (describing the warrant, DD-5s, and TLO report).

her findings until July 2, 2018 in an attempt to thwart any legal action against the officers.  *Id.* at ¶ 77.  Plaintiffs also recount a long history of complaints regarding insufficient IAB investigations and cite a federal lawsuit against Christian alleging an illegal search.  *Id.* at ¶¶ 97-110.

**II.     Standard**

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave and instructs that a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).  The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims."  *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (citation omitted).  In determining whether an amendment is futile, the court evaluates the amended complaint "through the prism of a Rule 12(b)(6) analysis."  *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423,

433 (S.D.N.Y. 2006).  Following this standard, the court accepts the Plaintiffs' factual allegations as true and draws reasonable inferences in favor of the Plaintiff.  *Id.*

## III.    Discussion

Plaintiffs seek to amend the complaint to both substitute the identities of the John Doe defendants and to add five new claims.  Plaintiffs argue that their claims are not time-barred and, if the claims are untimely, they relate back to the original complaint and are timely under the Plan.  Doc. 24.  The City challenges each argument, asserting that Plaintiffs' new claims are time-barred and futile.  Doc. 28.  The Court addresses each argument in turn.

### A.    Statute of Limitations

"[A]n amendment is futile if the claim proposed to be added would be barred by the applicable statute of limitations."  *Neal v. Wilson*, 239 F. Supp. 3d 755, 758 (S.D.N.Y. 2017).  In New York, claims under §1983 "are subject to a three-year statute of limitations . . . running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim."  *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (citations omitted).  As a general matter, "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."  *Harrigan v. City of New York*, No. 19 Civ. 3489 (LJL), 2020 WL 2555307, at *4 (S.D.N.Y. May 20, 2020) (quoting *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013)).

The City argues that the statute of limitations has run on all of the claims against Murphy, Graves and Christian, and the municipal liability claim against the City, on August 18, 2018, three years after the officers entered Plaintiffs' apartment.  Doc. 28 at

5-8.  According to the City, Plaintiffs knew or had reason to suspect that Murphy and Graves' conduct was actionable the very day that it occurred, August 18, 2015, and were aware of the IAB investigation results weeks before the limitations time expired on August 18, 2018.  *Id.* at 6-7.

At the heart of many of Plaintiffs' claims against Graves and Murphy is the illegal entry into their apartment.  Courts in this Circuit have repeatedly held that "[a]n unlawful search claim accrues at the time of the search."  *McClanahan v. Kelly*, No. 12 Civ. 5326 (PGG), 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014) (citing *Spencer v. Connecticut* 560 F. Supp.2d 153, 159 (D. Conn. 2008)); *see also Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (affirming dismissal of an illegal search claim because it was raised outside the statute of limitations which accrued from the date of the underlying search).  Plaintiffs have raised no convincing argument that this rule should not apply with equal force in this case.  Nor can they:  Plaintiffs spoke with the officers when they were still in the apartment conducting the search and were unable to ascertain who the officers were or what they sought by entering the apartment.  Doc. 1 at ¶¶ 27-28.  While the officers did represent that they had a warrant, Plaintiffs alleged in the original complaint that they were immediately "shocked and alarmed  . . . and stressed" by the officers' behavior and that the officers lacked probable cause.  Doc. 1 at ¶¶ 48, 50, 61.

Plaintiffs counter that the statute of limitations began accruing on their claims at three different times subsequent to the search:  on December 7, 2017 when IAB informed them that there was no warrant connected to the apartment, on July 2, 2018 when they learned of the results of the IAB investigation, and on February 22, 2019 when they received the initial disclosures.  Doc. 24 at 4-7.  None of these circumstances change that

Plaintiffs were well-aware of the alleged constitutional violation in this case from the very morning that the officers entered their apartment and could have raised almost all of the claims against Graves and Murphy at the time of the initial complaint.

Specifically, Plaintiffs argue that, prior to December 7, 2017, they did not know whether police had a warrant to search their apartment and therefore could not have raised their illegal search or abuse of process claims against Graves and Murphy.  Doc. 24 at 4-5.  Plaintiffs are correct that the constitutionality of searching a home without showing its occupants the search warrant is unsettled.  *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 451 (S.D.N.Y. 2018) (finding case law "strongly suggests that a failure to provide a warrant *before* entry . . . is not *per se* unconstitutional.") (citing *Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004)) (emphases in original).  However, Plaintiffs could have challenged whether the police had probable cause to enter their apartment whether or not a warrant existed.  Indeed, Plaintiffs alleged in the original complaint that the officers lacked probable cause for their actions.  Doc. 1 at ¶¶ 61, 70, 72, 76 and 79.  Moreover, accrual of time under the statute of limitations "does not wait until Plaintiff[s] ha[ve] received judicial verification that Defendants acts were wrongful."  *Barnett v. City of Yonkers*, No. 15 Civ. 4013 (KMK), 2018 WL 4680026, at *8 (S.D.N.Y. Sept. 28, 2018) (citing *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994)).  These claims are thus untimely.[12]

---

[12] Plaintiffs further argue that, had they raised the claims against Graves and Murphy in their original complaint they would have risked sanctions under Rule 11.  Doc. 31 at 1-3.  However, "where individuals are claiming their civil rights have been violated, the Court does not wish to place itself in the position of repressing attempts to vindicate those rights by an injudicious use of sanctions."  *Levy v. City of New York*, 726 F. Supp. 1446, 1456-57 (S.D.N.Y. 1989) (noting reluctance to impose sanctions unless counsel's conduct was egregious).  None of the cases upon which Plaintiffs rely analyze an alleged illegal search involving identified officers.  Doc. 31 at 2.

Plaintiffs further claim that they could not have alleged their conspiracy and First Amendment retaliation claim, or their failure to intervene claim prior to learning the results of the IAB investigation on July 2, 2018.  Doc. 24 at 6-7.  While the failure to intervene claims in connection with the search accrued against Graves and Murphy at the time of the search, Plaintiffs are correct that the claim could not have accrued with respect to Christian until the conclusion of the IAB investigation.  Similarly, the statute of limitations on the conspiracy claim, which involves allegations that Christian, Graves and Murphy worked together to cover up Graves and Murphy's illegal entry into Plaintiffs' apartment, could not have accrued until the IAB investigation was done.  Therefore, the conspiracy and First Amendment retaliation claim against Christian, Graves, and Murphy is timely.[13]

Plaintiffs also contend that the statute of limitations on their access to court and substantive due process claims did not accrue until the City served its initial disclosures on February 22, 2019.  Doc. 24 at 7-8.  An access to court claim is based on "a separate and distinct right to seek judicial relief for some wrong."  *Christopher v. Harbury*¸ 536 U.S. 403, 414-15 (2002).  To state a claim for an access to court violation, a plaintiff must allege that defendant's conduct was "deliberate and malicious" and "resulted in an actual injury to the plaintiff[.]"  *Mercado v. Town of Goshen*, No. 20 Civ. 5389 (LLS), 2020 WL 4892352, at *2 (S.D.N.Y. Aug. 19, 2020) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).  Actual injury requires a valid underlying cause of action, and a "frustration or hindrance of the litigation caused by the defendant's actions."  *Mercado*,

---

[13] For the same reasons, the Court rejects the City's argument that Plaintiffs' supervisory liability claim against Christian is untimely.  Doc. 28 at 5-7.

2020 WL 4892352, at *2 (*Harbury*, 536 U.S. at 415).  Because an access to court claim requires some hindrance to the litigation caused by the City, the statute of limitations could not have accrued until Plaintiffs' received the fruits of the IAB investigation.  *Id.* Thus, Plaintiffs' access to court claim against Christian, Graves, and Murphy is timely.[14]

However, because Plaintiffs' allegations in support of their substantive due process claim rest on the warrantless entry of their apartment, Doc. 23-1 at ¶¶ 145-56, which they admittedly plead as a Fourth Amendment violation, *id.* at ¶ 149, the Court denies Plaintiffs' motion to amend with respect to that claim with prejudice.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (citing *U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

Finally, though Plaintiffs do not argue that their proposed *Monell* claim is timely, the City urges the Court to reject the claim as out-of-time.  Docs. 24 at 23-24; 28 at 7-8. The portion of Plaintiffs' *Monell* claim that the City has a custom and practice of illegal searches, and that the City has failed to train its officers regarding such searches, began to accrue at the time of the search and is therefore untimely.  Doc. 23-1 at ¶¶ 171, 177. However, the portion of Plaintiffs' claim regarding the custom and practice of conducting insufficient IAB investigations and the failure to train IAB investigators could only have accrued at the close of the IAB investigation and is thus timely.  *Id.* at ¶¶ 171, 173.

Accordingly, Plaintiffs' illegal search, malicious abuse of process, and failure to intervene claims against Graves and Murphy are untimely.  Plaintiffs' *Monell* claim with

---

[14] As discussed below, however, Plaintiffs' proposed access to court claim is dismissed as futile.  *See infra* Part III.E.

respect to the illegal search is also untimely.  Plaintiffs' conspiracy and access to court claims against Graves, Murphy, and Christian are timely.  Plaintiffs' failure to intervene and supervisory liability claims against Christian are timely.  Plaintiffs' *Monell* claim with respect to the inadequate IAB investigation is also timely.  And, Plaintiffs' motion to amend is denied with prejudice with respect to the substantive due process claim.

###    B.    Equitable Tolling

Equitable tolling cannot save Plaintiffs' untimely claims against Graves, Murphy and the City.  Docs. 24 at 10-17; 28 at 12-14.  Equitable tolling of the statute of limitations is applied "only in rare and exceptional circumstances" when fairness requires that the statute of limitations be tolled.  *Ellul v. Congregation of Christian Brothers*, 774 F.3d 791, 801 (2d Cir. 2014) (citing *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013)).  To qualify, a plaintiff must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in the way of his bringing a lawsuit."  *Ellul*, 774 F.3d at 801 (citation omitted).  Under this framework, "[t]he relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action."  *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) (citations omitted).  Plaintiffs were aware of an illegal search, and the related causes of action, from the day the police entered their apartment.  That Plaintiffs' filed complaints with the CCRB and IAB, and inquired at their local precinct suggest that they immediately believed the officers' actions were unlawful.  They also knew Graves and Murphy's identities as of July 2, 2018, over a month before they filed their initial complaint.  Equitable tolling therefore does not apply to these claims.

### C.        Relation Back under Rule 15(c)(1)(A)

The Court may still entertain untimely claims if they relate back to the initial complaint under Fed. R. Civ. P. 15(c)(1)(A). *Forte v. City of New York*, No. 16 Civ. 560 (VSB), 2018 WL 4681610, at *5 (S.D.N.Y. Sept. 28, 2018). In this case, however, Plaintiffs' late claims do not meet the relevant standard.

"An amendment to a pleading relates back to the date of the original pleading when: the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). To assess relation back in this context, Courts look to "the entire *body* of limitations law" for the "more forgiving principle of relation back." *Hogan*, 738 F.3d at 518 (emphasis in original). Two provisions of the New York Civil Practice Law and Rules apply when plaintiffs propose to amend to name previously unidentified defendants: §§ 203 and 1024.

### a.        Section 203

Section 203(f) provides that "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." Courts evaluate whether new claims relate back to the original complaint under § 203 by determining whether

> (1) both claims arise out of the same conduct, transaction or occurrence,
> (2) the new defendant is united in interest with the original defendant, and
> (3) the new defendant knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been brought against him or it as well.

*Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 430 (S.D.N.Y. 2011) (citing *Buran v. Coupal*, 87 N.Y.2d 173, 178 (N.Y. 1995)).  Plaintiffs satisfy the first and second requirements.  All of Plaintiffs' untimely claims arise out of the August 18, 2015 search of their apartment and the officers are united in interest with the City against Plaintiffs' claims.  *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 586 (E.D.N.Y. 2017) ("The reality as observed in practice . . . is that the City and police officers have a practical unity of interest.").  The City argues that Graves and Murphy did not receive notice of this case through the City because it cannot be assumed that the City will represent them. Doc. 28 at 12.  But this argument is unavailing because courts "can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew that the additional defendants would be added to the existing suit."  *Abdell v. City of New York*, 759 F. Supp. 2d 450, 455 (S.D.N.Y. 2010) (citation omitted).  This showing was made when, in its November 21, 2018 request for an extension of time to respond to the complaint, the City asserted that it would determine whether it would "represent any officers who may have had any involvement in the alleged incident and are either named as defendants currently, or may become named as defendants moving forward in this matter."  Docs. 10 at 2; 31 at 3.  *See also Diaz v. City of New York*, No. 13 Civ. 8281 (JCF), 2015 WL 6125586, at *2 (S.D.N.Y. Oct. 7, 2015) (finding constructive notice to an initially unnamed police officer where Corporation Counsel had appeared on behalf of the City because "Corporation Counsel is legally required, subject to narrow exceptions, to defend members of the New York City police department in any civil suit arising out of actions taken within the scope of their public employment.") (citation

omitted).  Graves and Murphy thus had constructive notice through the City because the City was aware of their involvement and was trying to determine whether it would represent them.

However, because § 203 "embod[ies] essentially the same limitation as Federal Rule 15(c)(1)(C)[,]" this provision is unavailable to Plaintiffs because they cannot show mistake.  *Neal*, 239 F. Supp. 3d at 761.  Plaintiffs' knowledge of the names of Graves, and Murphy at the time they filed the original complaint defeats any claim of relation back under Rule 15(c)(1)(C).  *Palmer v. Stuart*, 274 F. App'x 58, 59 (2d Cir. 2008) ("Palmer concedes that, at the time that he prepared his complaint, he had in his possession an invoice identifying Officer Harding as the officer who had conducted the search of Palmer's person. . . . Under our case law, this knowledge defeats any claim of mistake.") (citing *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994) (holding non-identification of known defendants "must be considered a matter of choice, not mistake")).

Plaintiffs' reliance on *DaCosta v. City of New York*, 296 F. Supp. 3d 569 (E.D.N.Y. 2017) for the contrary argument is misplaced.  In *DaCosta*, the Court concluded upon review of state law that "suing 'John Doe' when a defendant's identity is unknown is a mistake for purposes of the relation-back doctrine of CPLR 203."  *Id.* at 590.  But that is not what happened in this case.  Here, Plaintiffs *were* admittedly aware of Graves and Murphy's identities well before filing the original complaint.  New York courts have repeatedly held that such knowledge precludes satisfying the mistake prong of § 203.  *Davis v. Sanseverino*, 145 A.D.3d 519, 520 (1st Dep't 2016) (finding "relation back would not be proper because his delay in bringing suit was not due to any 'mistake'

with respect to defendants' identities, which were known to plaintiff at all relevant times" and collecting cases).  As the New York Court of Appeals has said, "When a plaintiff intentionally decides not to assert a claim against a party known to be *potentially* liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired."  *Buran*, 87 N.Y.2d at 181 (emphasis added).  Plaintiffs knew prior to filing the original complaint that Graves and Murphy entered their apartment and did not have a warrant.  However, they chose not to name them as defendants until after the limitations period had run.  Under these circumstances, § 203 does not permit relation back.

### b.      Section 1024

Under § 1024 of the New York Civil Practice Law and Rules,

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known.  If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

This provision allows substitution of John Doe defendants for named defendants *nunc pro tunc* where a plaintiff has met two requirements:  (1)  plaintiff exercised due diligence before the statute of limitations ran to identify the John Doe defendants by name and (2) plaintiff's description of the John Doe defendants "fairly apprise[d] the party that he is the intended defendant."  *Hogan*, 738 F.3d at 518-19 (citing *Bumpus v. New York City Transit Auth.*, 66 A.D.3d 26, 30 (2d Dep't 2009)).

The City correctly argues that § 1024 does not apply in this case because Plaintiffs were not "ignorant of the name or identity of" Graves and Murphy.  Doc. 28 at 9-10.  Indeed, "a plaintiff may not designate a party as 'John Doe' under § 1024 if he has

actual knowledge of the party's identity." *Cotto v. City of New York*, Nos. 15 Civ. 9123, 16 Civ. 226 (RWS), 2017 WL 3476045, at *5 (S.D.N.Y. Aug. 11, 2017) (collecting cases). Here, prior to the filing of the initial complaint, Plaintiffs knew the names and titles of Graves and Murphy, even naming them within the factual recitation of the complaint, and thus cannot now benefit from § 1024.[15]

Accordingly, Plaintiffs' untimely claims do not relate back to the complaint under Rule 15(c)(1)(A).

### D.    Local Civil Rule 83.10

Plaintiffs' claims against Graves and Murphy are also out of time under Local Civil Rule 83.10. The Plan provides twice the amount of time as Rule 15(a)(1) to amend, stating that "[t]he complaint may be amended to name additional defendants without leave of the presiding judge within six weeks after the first defendant files its answer." Local Rule 83.10(6). Because the City filed its answer on January 25, 2019, Plaintiffs had until March 8, 2019 to amend with the identities of the John Doe defendants without leave of the Court but failed to do so. Doc. 12.

Plaintiffs argue that the date of their first request for the City's consent to amend on February 26, 2020 renders their amendments timely. Doc. 24 at 9-10. However, there is no need for a request for consent under the express terms of Local Rule 83.10(6). Moreover, the cases Plaintiffs rely on are inapposite as each rely on a prior version of Rule 15(a) which allowed for amendment "once as a matter of course at any time before a

---

[15] Plaintiffs' suggestion that they need not amend the case caption since Graves and Murphy were named in the body of the complaint is unconvincing. Doc. 31 at 7 & n.7. The case upon which Plaintiffs primarily rely, *Ogunbekun v. Town of Brighton*, No. 15 Civ. 6332 (CJS) (JWF), 2019 WL 3948742, at *4-5 (W.D.N.Y. July 31, 2019), involved a *pro se* litigant who was incapacitated. Plaintiffs, by contrast, include two practicing lawyers.

responsive pleading is served." *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2005 U.S. Dist. LEXIS 27784, *6-7 (S.D.N.Y. Aug. 15, 2005) (citing Fed. R. Civ. P. 15(a)); *see also Le Grand v.* Evan*,* 702 F.2d 415, 417 (2d Cir. 1983); *Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 795 (2d Cir. 1983).  Here, Plaintiffs did not ask to amend until after the City's answer was filed.

Thus, the Plan does not support Plaintiffs' motion to amend.

### E.      Futility of the Remaining Claims

The City argues that each new claim would not survive a motion to dismiss and therefore should be rejected as futile.  Doc. 28 at 15-25.  Plaintiffs argue that if the City does not represent the officers then it has no standing to make its futility arguments and refused to "embark[] on any 12(b)(6) analysis" on any claims against the officers until instructed by the Court.  Doc. 31 at 5, 7.  Of course, "District courts have the inherent authority to dismiss meritless claims sua sponte" where Plaintiffs had "notice and the opportunity to be heard."  *Sanya Lanausse v. City of New York*, No. 15 Civ. 1652 (LGS), 2016 WL 2851337, at *2 (S.D.N.Y. May 13, 2016).  Plaintiffs here could have responded to the City's futility arguments in reply, but chose to address only the *Monell* claim.  Doc. 31 at 7-9.  "To the extent the City does not have standing to move to dismiss," and the Court decides to dismiss any of the remaining claims, "they are dismissed sua sponte." *Sanya Lanausse*, 2016 WL 2851337, at *2.

The City argues that Plaintiffs have failed to state a claim for conspiracy and First Amendment retaliation because they do not allege a meeting of the minds between the officers to conspire to violate Plaintiffs' First Amendment rights, or that their actions were improperly motivated or had the effect of chilling Plaintiffs' behavior.  Doc. 28 at

17-18.  However, Plaintiffs specifically allege that Christian conspired with Graves and Murphy to cover up the illegal search of Plaintiffs' apartment and that they were motivated by a desire to suppress Plaintiffs' criticism as lawyers who work on cases involving police misconduct.  Doc. 23-1 at ¶¶ 28, 141-42.  Plaintiffs further allege that they were alarmed following the officers' intrusion.  Doc. 23-1 at ¶¶ 60, 62.  Moreover, the cases upon which the City relies are either devoid of specific allegations, were decided in the context of a motion for summary judgment rather than a motion to dismiss, or do not address the merits of the claim.  *See, e.g.*, *Curley v. Vill. of Suffern*, 268 F.3d 65, 69, 73 (2d Cir. 2001) (affirming grant of summary judgment); *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir. 1978) (remanding for further proceedings on claim about which the Court stated, "we express no view on the merits"); *K.D. ex el. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013) (dismissing conspiracy claim where "the Complaint does not set forth any specific facts that indicate any sort of meeting of the minds between" defendants); *Allen v. City of New York*, No. 03 Civ. 2829 (KMW) (GWG), 2007 WL 24796, *24 (S.D.N.Y. Jan. 3, 2007) (dismissing on summary judgment).  Plaintiffs are therefore permitted to amend the complaint to include their timely conspiracy and First Amendment retaliation claim against Christian, Graves, and Murphy.

The City also contends that Plaintiffs insufficiently plead their access to court claim because they do not allege any harm to their case as a result of the City's actions beyond delay.  Doc. 28 at 21-22.  As the Second Circuit has long held, "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation."  *Davis*, 320 F.3d at 352 (citation omitted).

Because Plaintiffs have been permitted to pursue their conspiracy claim against Graves, Murphy, and Christian, and claims against Christian and the City regarding the adequacy of the IAB investigation, Plaintiffs have not sufficiently alleged an access to court violation and their motion to amend is denied as to that claim.

Courts in this Circuit have also long recognized that there is no standalone right to an adequate investigation.  Doc. 28 at 20-21; *DePippo v. Cnty. of Putnam¸* No. 17 Civ. 7948 (NSR), 2019 WL 1004152, at *18 (S.D.N.Y. Feb. 28, 2019) (collecting cases). Plaintiffs' motion to amend the complaint is therefore denied with prejudice as to their failure to investigate claim.

Finally, the City argues that Plaintiffs have failed to state a claim of *Monell* liability regarding the inadequate IAB investigations because they fail to allege more than one incident of inadequate investigation, a causal link to the underlying constitutional violation, and the obvious need for training.  Doc. 28 at 22-25.  Contrary to the City's position, Plaintiffs detail a history of inadequate investigatory practices by the IAB and specifically highlight the need for better training.  Doc. 23-1 at ¶¶ 98-111 & n.1. Moreover, while the City is right that a failure to investigate is not cognizable as a freestanding claim under § 1983, *DePippo*, 2019 WL 1004152, at *18, it may still be considered as part of a *Monell* claim.  *Davis v. City of New York*, No. 12 Civ. 3297 (PGG), 2018 WL 10070540, at *5 (S.D.N.Y. Mar. 30, 2018) (noting that a failure to investigate and therefore discipline officers for excessive force can show deliberate indifference in support of a *Monell* claim).

Accordingly, Plaintiffs' motion to amend is denied with prejudice with respect to their access to court claim, but granted with respect to the conspiracy claim against

Christian, Graves, and Murphy, and the *Monell* claim for inadequate IAB investigations against the City.

## IV.    Conclusion

In sum, Plaintiffs' motion to amend is denied with prejudice with respect to

- the illegal search, malicious abuse of process, and failure to intervene claims against Graves and Murphy,
- the access to court claim against Graves, Murphy, and Christian,
- the *Monell* claim against the City regarding illegal searches, and
- the failure to investigate and substantive due process claims,

and granted with respect to the conspiracy claim against Graves, Murphy, and Christian, the supervisory liability and failure to intervene claims against Christian, and the *Monell* claim against the City regarding inadequate IAB investigations.

The Clerk of Court is respectfully directed to terminate the motion, Docs. 22 and 39.

The parties are further directed to provide the Court with a status update within forty-eight hours of their settlement conference before Magistrate Judge Stewart D. Aaron scheduled for September 30, 2020.

SO ORDERED.

Dated:    September 21, 2020
            New York, New York

_____
Edgardo Ramos, U.S.D.J.